UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JAMES BURNS,

               Plaintiff,

      v.

PRIMARY PARTNERCARE MANAGEMENT
GROUP, INC., et al.,

             Defendants.
----------------------------------------------------------------X

**MEMORANDUM
AND ORDER**
23-CV-6312-SJB-ST

**BULSARA, United States District Judge:**

Defendants Primary PartnerCare Management Group, Inc. ("Primary PartnerCare"), Marion Davis, and Harry Jacob (collectively, "Defendants") have moved for summary judgment on Plaintiff James Burns's Complaint alleging retaliation under Title VII and the New York State Human Rights Law ("NYSHRL").  Burns alleges that Defendants fired him after they learned about a pending lawsuit for retaliation he had filed against his previous employer.  Defendants' motion asks the Court to evaluate the credibility of Burns's account and deem it implausible.  Because such a determination is rarely, if ever, made at summary judgment—and certainly cannot be made on this record—the motion is denied.

<u>STANDARD FOR SUMMARY JUDGMENT</u>

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury

could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "In determining whether summary judgment is appropriate, [the Court] must resolve all ambiguities and draw all reasonable inferences against the moving party."  *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" in one of two ways.  Fed. R. Civ. P. 56(c)(1).  It may cite to portions of the record "including depositions, documents, electronically stored information, affidavits or declarations, . . . admissions, interrogatory answers, or other materials."  *Id.* R. 56(c)(1)(A).  Alternatively, it may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  *Id.* R. 56(c)(1)(B); *cf. Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988).

In moving for summary judgment or answering such a motion, litigants are required by the Local Rules to provide a statement (a Rule 56.1 statement) setting forth purported undisputed facts or, if controverting any fact, responding to each assertion. *See* Loc. Civ. R. 56.1(a)–(b).  In both instances, the party must support its position by citing to admissible evidence from the record.  *Id.* R. 56.1(d); *see also* Fed. R. Civ. P. 56(c) (requiring reliance on admissible evidence in the record in supporting or controverting a purported material fact).  "The purpose of Local Rule 56.1 is to streamline the

2

consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001).

Where claims in opposing Rule 56.1 statements are "genuinely disputed," the Court will consider the evidentiary sources of the claims. *Halberg v. United Behav. Health*, 408 F. Supp. 3d 118, 146 (E.D.N.Y. 2019) (adopting report and recommendation). In evaluating the sources of claims made in dueling Rule 56.1 statements, the Court cannot—as is true for the summary judgment motion as a whole—weigh evidence or assess the credibility of witnesses. *See United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994). Furthermore, "[l]egal arguments are impermissible in any Rule 56.1 Statement and are to be disregarded." *Taveras v. HRV Mgmt., Inc.*, No. 17-CV-5211, 2020 WL 1501777, at *2 (E.D.N.Y. Mar. 24, 2020); *Lawrence v. Cont'l Cas. Co.*, No. 12-CV-412, 2013 WL 4458755, at *1 n.1 (E.D.N.Y. Aug. 16, 2013) ("Both parties have submitted Local Rule 56.1 statements and responses to each other's statements that mix factual assertions with legal argument and therefore fail to meet the requirements of Local Rule 56.1. The facts . . . are taken from those assertions contained in the Local Rule 56.1 statements that comply with Local Rule 56.1[.]" (citations omitted)). The court may not grant summary judgment based on a fact in a Rule 56.1 statement—even if undisputed—not supported by admissible evidence. *E.g.*, *Giannullo v. City of New York*, 322 F.3d 139, 142–43 (2d Cir. 2003) (vacating grant of summary judgment to defendants based on facts enumerated in Rule 56.1 statement supported only by arguments in briefs rather than admissible evidence). The Court must also disregard conclusory denials that lack citations to

admissible evidence.  *Rodriguez v. Schneider*, No. 95-CV-4083, 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999) ("*Rule 56.1 statements are not argument.  They should contain factual assertions, with citation to the record.  They should not contain conclusions[.]"*), *aff'd*, 56 F. App'x 27, 29 (2d Cir. 2003).  Also, where the opposing party fails to specifically controvert a numbered paragraph in the Rule 56.1 statement, the statement by the moving party "will be deemed to be admitted."  Loc. Civ. R. 56.1(c).  The Court also does not give any consideration to hearsay, speculation, or inadmissible evidence in evaluating declarations or affidavits.  *Pacenza v. IBM Corp.*, 363 F. App'x 128, 130 (2d Cir. 2010) ("[A] court is obliged not to consider inadmissible evidence at the summary judgment stage[.]"); *Crawford v. Dep't of Investigation*, No. 05-CV-5368, 2007 WL 2850512, at *2 (S.D.N.Y. Oct. 1, 2007) ("[A] non-moving party 'must set forth specific facts showing that there is a genuine issue for trial;' he or she 'may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.'" (quoting *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005))), *aff'd*, 324 F. App'x 139, 143 (2d Cir. 2009).

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court finds the following facts—drawn from the pleadings, the parties' respective Rule 56.1 statements, and supporting affidavits and exhibits attached thereto—are undisputed unless otherwise noted.

Burns filed his Complaint on February 28, 2023, alleging claims against all Defendants for retaliation under Title VII, (Compl., Dkt. No. 1 ¶¶ 30-37), and retaliation

4

under the NYSHRL, (*id.* ¶¶ 38–45), and, in the alternative, alleging a claim against Davis and Jacob for aiding and abetting retaliation under the NYSHRL, (*id.* ¶¶ 46–52).

Burns is a human resources professional who previously worked for Tilebar, LLC ("Tilebar").  (Defs.' Rule 56.1 Statement dated May 9, 2025 ("Defs.' 56.1 Stmt."), Dkt. No. 37-2 ¶ 1; Pl.'s Rule 56.1 Statement dated July 11, 2025 ("Pl.'s 56.1 Stmt."), Dkt. No. 38-1 ¶¶ 1, 36).  In 2020, Burns filed an employment discrimination lawsuit against Tilebar in the Southern District of New York.  (*Id.* ¶ 1; Defs.' 56.1 Stmt. ¶ 1).

Burns was hired by Primary PartnerCare and began working as the Vice President of Human Resources on September 20, 2021.  (Compl. ¶ 8; Defs.' 56.1 Stmt. ¶ 12; Pl.'s 56.1 Stmt. ¶ 12).  On September 23, 2021, he sent an email requesting a meeting with Marion Davis, Primary PartnerCare's CEO, (Compl. ¶ 6), because he "[got] the sense that [Davis] might be unhappy with [her] hiring of [him]."  (Defs.' 56.1 Stmt. ¶ 13; Pl.'s 56.1 Stmt. ¶ 13).  The next day, Burns met with Davis, and they were joined by Dr. Harry Jacob, Primary PartnerCare's Chief Medical Officer and Davis's husband.  (*Id.* ¶ 14; Defs.' 56.1 Stmt. ¶ 14).  One week later, Davis sent Burns an email stating that she would send a separation agreement within the next few days, and she "view[ed] the separation as mutual."  (*Id.* ¶ 20; Pl.'s 56.1 Stmt. ¶ 20).

The exact nature of what was said leading up to and at that September 24, 2021 meeting, and the reason for Burns's departure, are hotly disputed.  As recounted by Burns, the day before his meeting with Davis and Jacob, Primary PartnerCare's Controller, Gregory Koukos, told Burns that Davis and Jacob were aware of and troubled by his Tilebar lawsuit, and that Davis was going to try to make him so

miserable that he would leave.  (*Id.* ¶¶ 2–4, 6, 8–9, 11).  Then, when he met with Davis and Jacob, Burns claims that he was fired, with Jacob stating he was being terminated because "[n]obody is comfortable with this multimillion-dollar lawsuit you have."  (*Id.* ¶¶ 2, 4).

On the other hand, Defendants say they had no knowledge of Burns's Tilebar lawsuit until October 2021, when Burns, through counsel, made allegations of retaliation.  (Defs.' 56.1 Stmt. ¶¶ 3–6).  Burns disputes that timeline.  (Pl.'s 56.1 Stmt. ¶¶ 3–6).  Defendants acknowledge that Burns testified that Davis and Jacob knew about the Tilebar lawsuit before they fired him, but they assert there is no other evidentiary support for that contention.  (Defs.' 56.1 Stmt. ¶ 8).  Burns disagrees, and points to his own account, and deposition testimony in which Koukos explains that he did not recall—rather than that he could deny with complete certainty—telling Burns that Defendants knew about his lawsuit.  (Pl.'s 56.1 Stmt. ¶¶ 6, 8).

<u>DISCUSSION</u>

The burden-shifting analysis from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), governs Title VII and NYSHRL retaliation claims.  *Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 45 (2d Cir. 2025).  Under that framework, "a plaintiff carries the initial burden of making out a prima facie case of retaliation."  *Id.*  "In the Title VII context, this requires the plaintiff to establish four elements: (1) 'an adverse employment action'; (2) 'participation in a protected activity'; (3) 'that the defendant knew of the protected activity'; and '(4) a causal connection between the protected activity and the adverse employment action.'"  *Id.* (quoting *Littlejohn v. City of New York*,

795 F.3d 297, 316 (2d Cir. 2015)). "The . . . NYSHRL employ[s] a more liberal standard: [A] plaintiff claiming retaliation must demonstrate that [he] took an action opposing [his] employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Id.* (quotation omitted). If the plaintiff establishes a prima facie case of retaliation . . . , the defendant then has the opportunity to offer legitimate reasons for its actions." *Id.* (quotation omitted). If the defendant does so, "the burden shifts back to the plaintiff to show either that the defendant's reasons were pretextual, or that the defendant's stated reasons were not its sole basis for taking action, and that its conduct was based at least in part on discrimination." *Id.* (quotation omitted).

The only element of Burns's case that Defendants challenge—and the sole basis on which they seek summary judgment—is whether Defendants had knowledge of Burns's alleged protected activity. (Defs.' Mem. in Supp. of Summ. J. dated May 9, 2025 ("Defs.' Mot."), Dkt. No. 37-1 at 13).

It is plain there is a factual dispute over Defendants' knowledge.[1] Burns and the Defendants have conflicting accounts of whether Davis and Jacob made statements attributing Burns's alleged firing to his prior lawsuit.

Burns testified that Koukos, another employee, told him that Defendants were aware of his lawsuit. (Pl.'s 56.1 Stmt. ¶ 2 (citing Dep. of James Burns ("Burns Dep."),

---

[1] Both parties proceed without questioning—that is, they assume—that an employer may not retaliate against an employee for protected activity before a *prior* employer. But neither side cites any authority to suggest (or dispute) that such conduct falls within the protections of these statutes.

attached to Pl.'s Opp'n to Defs.' Mot. as Ex. A, Dkt. No. 38-21 at 58:17–59:2)).  Burns also

testified that Defendants—specifically, Jacob—told him "nobody's comfortable with

this multimillion-dollar lawsuit you have . . . . It's not gonna work and we need to move

on," (*id.* ¶ 4 (citing Burns Dep. at 31:7-11)), and intimated that was the reason for his

termination.

On the other side, Defendants assert that neither Davis, Jacob, nor Koukos had

any knowledge of that lawsuit until after Burns left Primary PartnerCare, and that they

never made the statements Burns claims they did.  For these positions, they cite their

own testimonial accounts.  (Defs.' 56.1 Stmt. ¶¶ 3–6 (citing Decl. of Marion Davis,

attached to Defs.' Mot., Dkt. No. 37-3 ¶ 17; Dep. of Harry Jacob, attached to Decl. of Eric

Hoffman ("Hoffman Decl.") as Ex. E, Dkt. No. 37-21 at 55:9–56:16)).

The two sides are plainly in tension; ultimately, one is true, the other is not.  And

such a dispute—whether to believe one witness or another set of witnesses—is a matter

for the jury to determine, not this Court.

Still, Defendants have moved for summary judgment.  They argue that the only

evidence of Defendants' knowledge is Burns's own testimony, which they assert is not

credible.  (Defs.' Mot. at 1–2).  Credibility, of course, is not a matter that can be decided

at summary judgment.  Aware of this, they rely entirely on a single twenty-year-old

Court of Appeals decision, *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005), to

contend that this is the rarest of rare circumstances: where a witness's testimony is *so*

unbelievable, a court can and should grant summary judgment.  Defendants are wrong.

8

In *Jeffreys*, plaintiff-appellant Percy Jeffreys testified (in an affidavit) that police officers threw him out of a window. 426 F.3d at 551. But on multiple other occasions, Jeffreys himself gave radically different accounts of that incident: he told medical personnel and New York City Department of Corrections staff that he jumped out of the window, he told a police officer that he was trying to flee and fell, and only nine months after the incident did he first allege that he was thrown. *Id.* at 552. Medical records also directly contradicted Jeffreys's allegations. *Id.* at 552–53. On that record, the Court of Appeals deemed the case the "rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete," so that it would be impossible for a district court to decide whether any "genuine" issues of material fact exist *without* "making some assessment of the plaintiff's account." *Id.* at 554. In such a circumstance, "the moving party still must meet the difficult burden of demonstrating that there is no evidence in the record upon which a reasonable factfinder could base a verdict in the plaintiff's favor." *Id.* And it concluded that, in that rare circumstance where "no reasonable person would undertake the suspension of disbelief necessary to give credit to the allegations made in the complaint," summary judgment was appropriate. *Id.* at 555 (quotation omitted).

*Jeffreys* is a "narrow exception" to the "bedrock rule of civil procedure that a district court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 245 (2d Cir. 2020) (quotation omitted). "[I]t applies only in the rare circumstance where a witness's testimony is so problematic that no reasonable juror could credit it." *Id.* at 246

(quotation omitted).  "[T]he general rule remains that a district court may not discredit a witness's deposition testimony [or declaration] on a motion for summary judgment, because the assessment of a witness's credibility is a function reserved for the jury."  *Id.* (quotation omitted).

There are several distinguishing characteristics of *Jeffreys*: (1) multiple, contradictory accounts of the events proffered by plaintiff; (2) exclusive reliance on plaintiff's account to oppose summary judgment, but significant gaps and contradictions in those accounts with other record testimony (or documentary evidence); and (3) unequivocal and consistent testimony on the part of defendants combined with a patent impossibility (or absurdity) of plaintiff's account.  Those characteristics are not present here.  Burns has not offered contradictory accounts, but a single account.  And while his version of events is the only evidence in his favor, it does not have significant gaps; it does not contradict documentary evidence (like medical records), and it is only in tension with Defendants' testimonial accounts.  Moreover, the

10

testimony Defendants offer is not without ambiguity.[2]  Instead of focusing on *Jeffreys*'s

essential criteria, Defendants make other arguments as to why Burns's account is not

credible.  Not only do these supposed credibility problems place this case outside of

*Jeffreys*, but they fail on their own terms—that is, they only underscore the reasons why

summary judgment is inappropriate.

Defendants first contend that Burns's testimony is self-serving or uncorroborated

by tangible evidence or other witnesses.  (Defs.' Mot. at 14–16).  But *Jeffreys* does not

apply to such a situation.  Indeed, that position is legally untenable: a plaintiff's own

testimony (which is necessarily self-serving) can be the sole basis on which a claim may

survive summary judgment.  *See Knox v. CRC Mgmt. Co., LLC*, 134 F.4th 39, 48–49 (2d

Cir. 2025) ("[A]t summary judgment, [a plaintiff is] entitled to rely on his own

testimony . . . . There is nothing in [Federal Rule of Civil Procedure 56(c)] to suggest that

---

[2] For example, the parties engage in a back-and-forth about Koukos's recollection of a conversation with Burns.  Defendants contend that Koukos never admitted to having told Burns that Jacob and Davis knew about his Tilebar lawsuit.  (Defs.' Reply Mem. in Supp. of Summ. J. dated Aug. 1, 2025, Dkt. No. 39 at 6).  And on the basis of that interpretation, Defendants contend that Burns must be lying, because he gives a diametrically opposite version: that Koukos told him about their awareness of the suit.  To make this leap, Defendants have to contort Koukos's testimony.  Koukos was asked: "If Jim Burns does recall a conversation that you two had, you are not in a position to agree or disagree with him because you don't remember it one way or the other, right?" (Dep. of Gregory Koukos attached to Hoffman Decl. as Ex. D, Dkt. No. 37-20 at 49:18-21).  Koukos answered: "Correct.  I do not remember a conversation with Jim." (*Id.* at 49:23-24).  In other words, the testimony, at best, says that Koukos does not recall the exchange, not that he denied making the statement.  (*See also id.* at 35:13-16 ("Q.  Do you recall a conversation with Jim Burns where you told him, 'I don't think you're going to be around much longer'?  A.  No."); *id.* at 36:6-13 ("Q.  Do you recall saying to Jim, 'Marion is going to make your life miserable to make you quit'?  A.  I don't remember saying that.  Q.  Is it that you don't remember one way or the other whether or not you did or did not say it? . . .  A.  I don't remember saying that one way or the other.")).

11

nonmovants' affidavits alone cannot—as a matter of law—suffice to defend against a motion for summary judgment.  And [t]o hold . . . that the nonmovant's allegations of fact are (because 'self-serving') insufficient to fend off summary judgment would be to thrust the courts—at an inappropriate stage—into an adjudication of the merits." (quotations omitted)); *Bellamy v. City of New York*, 914 F.3d 727, 746 (2d Cir. 2019) ("[A] § 1983 plaintiff's testimony alone may be independently sufficient to raise a genuine issue of material fact.  *Jeffreys* is inapposite because the self-serving testimony in that case was contradictory and incomplete, and so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations." (quotations and citation omitted)).

Defendants try to latch on *Jeffreys* by pointing out alleged contradictions in Burns's testimony.  (Defs.' Mot. at 16–19).  Recall that in *Jeffreys*, the contradictions were core to plaintiff's claim: he first said nothing about being thrown out of a window, and said he fell or jumped, and months later, he said he was thrown by police.  Here, Defendants point to a variety of discrepancies.  But none of them concern Burns's core claim—that he was told he was being fired because of his prior lawsuit.  Instead, they pertain to ancillary tensions.  While such tensions might be useful cross-examination material as a means to get a jury to disbelieve Burns, they do not amount to the kind of material contradictions that characterized *Jeffreys*.

Defendants first note that in Burns's administrative claim with the Equal Employment Opportunity Commission ("EEOC"), he said at his termination meeting there was no discussion of how his departure would be characterized or an expectation

12

of receiving 30 days' pay.  (*Id.* at 16).  But at his deposition, Burns testified that Davis acknowledged that he was terminated without cause and would pay him for 30 days.[3] (*Id.*).  These inconsistencies are hardly suggestive that the entirety of his account is false or that the core allegation—that he was fired because he had a pending lawsuit claiming employment discrimination—is entirely implausible.

Defendants then suggest that Burns's account must be implausible because Burns requested the meeting, did not push back against Jacob's or Koukos's statements that indicated retaliation, and did not take any contemporaneous notes of the meeting, despite his human resources experience.  (*Id.* at 17–18).  The absence of documentary evidence—and evidence Defendants believe should have been created, based solely on their own say-so—is not proof of contradiction or implausibility (otherwise, the rule permitting a plaintiff's testimony to be sufficient to survive summary judgment would have no force).

Defendants also suggest Burns fabricated a story of receiving mental health treatment for emotional distress following his termination; and numerous efforts have failed to surface any records of such treatment.  (*Id.* at 18).  Burns vehemently disputes this account and questions the methods Defendants used to try to track down his mental health treatment.  (Pl.'s Mem. in Opp'n to Defs.' Mot. dated July 11, 2025 ("Pl.'s Opp'n"), Dkt. No. 38 at 18–19).  Separately, Defendants say that at his deposition, Burns

---

[3] Defendants theorize that Burns's testimony was a deliberate response to the notes Davis took after the meeting, which were produced to Burns before the deposition.  (Defs.' Mot. at 7).  That does not change the ancillary nature of this alleged inconsistency.

testified that Tilebar did not accuse him of disclosing confidential information during his employment, but was then presented with a letter evidencing such an accusation. (Defs.' Mot. at 18). Both of these alleged inconsistencies are exogenous—they relate to ancillary issues that Defendants are free to discuss with the jury, but do nothing to demonstrate that the entirety of Burns's account is not believable and his claim should be dismissed before trial. The *falsus in uno, falsus in omnibus* principle—that a falsity in one matter permits a conclusion that the witness is lying about all matters—is a jury instruction, not a principle employable at summary judgment.

Ultimately, the facts and alleged contradictions Defendants identify are largely minor details. None of them are material to Burns's core case. Whether or not Burns remembered receiving a letter with an accusation of impropriety from his former employer, for example, bears little on this case. And whether Burns sought mental health treatment for emotional distress may impact damages or credibility considerations at trial. But Burns's testimony has been generally consistent, from his EEOC complaint through the current record, on the central issues: that he was told that Defendants were discussing his prior discrimination lawsuit, and that Defendants referenced the lawsuit as the reason for his termination. *Cf. Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 22–23 (2d Cir. 2014) ("Here, by contrast, Rivera does not allege the occurrence of something that he previously described as not happening. . . . In his administrative and court assertions he has not been inconsistent in claiming that he was subjected to ethnic slurs. Any variance in those assertions has been in the *number of times* he was subjected to such slurs. That Rivera did not complain of ethnic slurs to [his

14

employer] may lead a factfinder to find that claim not credible, but there is no real, unequivocal, and inescapable contradiction of the sort we contemplated in *Jeffreys* . . . and matters of credibility are not to be determined on a motion for summary judgment.").[4]

Since the Court cannot engage in credibility determinations, it must conclude that there is a genuine issue of material fact as to Defendants' knowledge of Burns's Tilebar lawsuit. And since that is the only argument Defendants make in their summary judgment motion, they cannot prevail. *Tolbert*, 790 F.3d at 438 ("There was no argument in the district court or before us that summary judgment should be granted at the second or third stages of the *McDonnell Douglas* analysis. . . . [W]e conclude that Mr. Tolbert met his initial burden of establishing a prima facie case of discrimination[.]").

---

[4] Defendants cite to a single case where *Jeffreys* was applied successfully: *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98 (2d Cir. 2011). But this case is not apposite to *Rojas* either. In *Rojas*, the "critical issue" was whether the harassment the plaintiff alleged could be imputed to the Diocese she sued—that is, whether the alleged harasser was the plaintiff's supervisor, and whether the Diocese knew or should have known about the harassment. *Id.* at 101. But the plaintiff had made contradictory statements—in her administrative and federal court complaints, in her testimony at a prior criminal trial, in her interrogatory responses, and then at her later deposition—about whether the alleged harasser was a coworker or supervisor, and whether she reported the harassment to the Diocese. *Id.* at 101–03. All those issues went "to the heart of" whether she had met her summary judgment burden. *Id.* at 106. The Diocese supported its account with affidavits, as well as contemporaneous emails and notes. *Id.* at 103. Though the Court of Appeals found *Jeffreys* applicable, it simultaneously cautioned, "we do not suggest that district courts should routinely engage in searching, skeptical analyses of parties' testimony in opposition to summary judgment." *Id.* at 106.

15

CONCLUSION

For the reasons explained above, Defendants' motion for summary judgment is denied.  The parties are directed to file a joint proposed pretrial order consistent with the undersigned's Individual Practices by **April 9, 2026**.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date:  March 12, 2026
           Central Islip, New York

16